IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ORLANDO WILSON,

Plaintiff,

v.

ALANA ACKER,

Defendant.

OPINION and ORDER

25-cv-102-jdp

Plaintiff Orlando Wilson, proceeding without counsel, alleges that the former health services manager at Columbia Correctional Institution, defendant Alana Acker, denied him a scheduled visit to an offsite cardiologist. Dkt. 9. Wilson is proceeding on an Eighth Amendment medical care claim for damages. Dkt. 10.

Acker moves for summary judgment. Dkt. 40. The material facts show that Acker did not directly deny Wilson a visit to the cardiologist, such as by stopping him from leaving the prison for that purpose, or by canceling it. Wilson contends that Acker indirectly denied him that visit by failing to approve soft handcuff restraints. He says that he needed soft restraints to make the visit without serious wrist pain because he was allergic to metal handcuff restraints. I dismissed a variant of this claim on screening the amended complaint, and amending a pleading through summary judgment opposition, as Wilson attempts to do here, is improper. But even if I considered this reframed claim, the undisputed facts show that Acker lacked the authority to approve soft restraints. Acker cannot be liable for a denial of medical care that she lacked the authority to provide. I will grant Acker's motion and close the case.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Wilson is incarcerated at Columbia Correctional Institution (CCI). Wilson has a history of coronary artery disease, including complete artery blockage and other cardiovascular issues.

Acker was the health services manager at CCI from November 2022 to March 2026. The health services manager provides the overall administrative support and direction of the health services unit (HSU). The health services manager usually does not evaluate, treat, or prescribe medication for prisoners, but she occasionally steps in if the HSU is short staffed. *See* Dkt. 59 ¶¶ 6–8. The health services manager defers all decisions related to a prisoner's treatment plan to advanced care providers. *Id.* ¶ 9.

On November 5, 2024, Wilson was evaluated by Dr. Walter Kao at Aspirus Portage Clinic for chest discomfort for the past two months. Kao recommended that Wilson receive a chemical stress test. The first part of that test was scheduled for December 13, 2024, and the second part for December 18, 2024.

Wilson says that, sometime after November 5, he told Acker that he would need soft (i.e., plastic) handcuff restraints during transport to the offsite cardiologist to avoid an allergic reaction to metal handcuff restraints. *See* Dkt. 56 ¶ 2. Wilson says that Acker told him to place a medical request for that accommodation. *Id.*

On November 20, 2024, nurse Haidee Adeyemo saw Wilson for complaints for being allergic to metal handcuffs. Adeyemo made a referral to the provider to order a test for nickel to see if Wilson was allergic to metal handcuffs. *See* Dkt. 59 ¶ 60.

Wilson says that, on December 13, 2024, he returned from his appointment for the first part of his chemical stress test with swollen wrists. *See* Dkt. 56 ¶¶ 11, 15, 39. Wilson

explains that he had been placed in metal restraints, causing his wrists to swell and develop hives. *See id.* ¶¶ 11, 15, 39–40. Wilson also says that he had told Acker several times that metal restraints caused him serious pain, including every time that he was transported from the prison. *See id.* ¶¶ 36, 40.

Wilson says that, before his transfer to CCI, he had been allowed to use soft restraints for ten years. *See* Dkt. 56 ¶¶ 8, 27, 43. But Wilson's special handling summary, which contains entries dating to 2014, does not show that Wilson had been approved for that accommodation. *See* Dkt. 46-1. Wilson says that the accommodation had appeared on his special handling summary before his transfer to CCI, but he fails to explain a basis for personal knowledge of that matter, even to say that he had seen an earlier copy of the summary. *See* Dkt. 56 ¶ 45.

On December 18, 2024, an HSU staff member documented that Wilson refused to return to the offsite cardiologist for the second part of his chemical stress test. Dkt. 45-1 at 20. That day, nurse Jill Winkler emailed Dr. Lavoie, stating that Wilson had refused the second part of his chemical stress test because his request to be placed in soft cuff restraints during transport had been denied. Dkt. 45-1 at 21.

Wilson disputes that he refused transport. Dkt. 56 ¶ 5. Wilson says that, on that date, he asked a medical transportation officer if Acker had approved his request for soft restraints. *Id.* ¶ 4. Wilson also says that the officer told him that he would investigate but never returned to his cell to transport him to the cardiologist. *Id.*

Prisoners may not receive soft restraints without prior approval. Dkt. 59 ¶ 47. Approval comes from the prisoner's advanced care provider or the special needs committee. *Id.* ¶ 48. Acker was on the special needs committee but, while acting in that capacity, she does not recall denying or approving a request by Wilson for an accommodation for soft restraints. *See id.* ¶ 50.

Wilson says that Acker denied, apparently verbally, his request for soft restraints at some point. *See* Dkt. 56 ¶ 23.

On December 20, 2024, Wilson submitted a medical request stating that he was denied a trip to the cardiologist. Wilson was informed that the appointment would be rescheduled. An advanced practice nurse prescriber, Jeanie Kramer, ordered a routine lab test that included a serum nickel blood test. In about a week, Wilson's lab results came back in the normal range. Dr. Lavoie agreed that the test results were normal but suggested placing a barrier between Wilson's wrists when he wore metal restraints. In early January 2025, Acker gave Wilson self-adherent wrap to use as a barrier. *See* Dkt. 59 ¶ 71.

On February 6, 2025, the second part of Wilson's chemical stress test was completed. Dkt. 49 at 14. The cardiologist made similar findings to those that had already been made with respect to his cardiovascular issues.

In August 2025, Wilson placed a medical request for larger restraints, stating that his restraints were too small and had been touching his wrists, causing swelling and irritation. Dkt. 45-2 at 3. An advance practice nurse prescriber, Melissa Cockell, approved soft restraints for offsite visits for 90 days.

ANALYSIS

Wilson is proceeding on an Eighth Amendment claim for damages against Acker based on the allegation that she denied him a trip to the cardiologist on about December 20, 2024. *See* Dkt. 9 at 3; Dkt. 24 at 8 (court's summary of amended complaint's allegations). This claim has a preliminary problem: the summary judgment record contradicts the allegation that Acker denied Wilson a trip to the offsite cardiologist. Wilson was scheduled to be transported to the

4

cardiologist on December 18, 2024, and the medical transportation officer went to his cell to take him. On Wilson's version of the facts, instead of leaving, he decided to press his request for soft restraints. He says that he asked the officer to investigate his previous request to Acker for that accommodation. Wilson also says that the officer did not return, but there is no evidence that Acker played a role in that result. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (stating that individual liability for a civil rights violation requires personal involvement in the alleged constitutional deprivation).

Although the summary judgment record undermines Wilson's basic claim, I will interpret the claim more broadly. I take Wilson to argue that Acker's failure to obtain soft restraints caused him to miss the December 18 trip to the cardiologist. The idea is that metal restraints caused Wilson serious pain, so he was compelled to pursue his request for soft restraints instead of leaving with the transportation officer.

But this broader claim fares no better. It is a variant of a claim that I dismissed on screening the amended complaint. Wilson alleged that Acker did not order soft restraints even though she knew that he was allergic to regular handcuffs, but I did not allow him to proceed on that claim. *See* Dkt. 10 at 2 (court's summary of amended complaint's allegations). "[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment," *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), but that is what Wilson attempts to do here. I will not allow this last-minute amendment.

But, for an even more specific reason, the evidence shows that Acker is entitled to summary judgment on Wilson's medical care claim. I begin with the legal standard. The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a medical care claim, Wilson

must show that he had an objectively serious medical condition that Acker consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Wilson's cardiovascular problems are a serious medical need, and I will assume for purposes of this opinion that he had a serious medical need for soft restraints. The basic issue, then, is whether Acker consciously disregarded those needs.

But there's another layer. To prevail, Wilson must also show that Acker, through her own actions, denied him medical care. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). So, as noted above, individual liability for a civil rights violation requires personal involvement in the alleged constitutional deprivation. *Colbert*, 851 F.3d at 657. Acker cannot be liable for a constitutional deprivation "if the remedial step was not within [her] power." *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).

Wilson faults Acker for not providing him with soft restraints by December 18, 2024, but it's undisputed that prisoners may not be issued soft restraints without prior approval from an advanced care provider or the special needs committee. Acker was the health services manager, not Wilson's advanced care provider. Acker was on the special needs committee but, while in that capacity, she does not recall participating in any decision to approve or deny soft restraints for Wilson. Wilson suggests that Acker could have approved his request for soft restraints herself because she was on the special needs committee, *see* Dkt. 56 ¶¶ 48–49, but no evidence supports this statement. I will assume for purposes of this opinion that Acker had the authority to bring Wilson's request to the attention of the special needs committee. But there is no evidence that the committee would have approved the request. In fact, shortly after Wilson missed his original second chemical test, neither Kramer nor Lavoie approved soft restraints. Wilson offers pure speculation that the special needs committee would have

approved a request by Acker for soft restraints, which does not overcome summary judgment. *See Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024). I will grant summary judgment to Acker and close the case.

ORDER

IT IS ORDERED that:

1.  Defendant Alana Acker's motion for summary judgment, Dkt. 40, is GRANTED.

2.  The clerk of court is directed to enter judgment and close the case.

Entered July 21, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge